UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:25-CR-10-REW-HAI |
| v. | ) | |
| | ) | |
| KATELYNN NICHOLE BOATRIGHT, | ) | OPINION & ORDER |
| *also known as* Katie Boatright, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Katelynn Nichole Boatright moves to suppress all evidence seized from a traffic stop that occurred on December 2, 2024, *see* DE 25, arguing that police relied on a facially deficient warrant to place a GPS tracking device on her car and collect the evidence that ultimately prompted the stop, *see id.* at 6–7. The Court referred suppression proceedings to United States Magistrate Judge Hanly A. Ingram, *see* DE 36, who recommended that the Court deny Boatright's motion after finding that the warrant was not constitutionally deficient, *see* DE 58 at 6–11.

Boatright objected to Judge Ingram's recommendation, *see* DE 61, and the Court determined, after careful review, that the warrant *was* constitutionally deficient because it lacked a temporal limit on the authorized duration of tracking, *see* DE 68 at 10–15. Upon finding the warrant unconstitutional, the Court ordered the parties to submit additional briefing addressing whether the good faith exception spares exclusion. *See id.* at 15–19. Both Boatright and the Government submitted their briefs, *see* DE 70; DE 71, and the matter is ripe for decision. Ultimately, the Court concludes that the good faith exception does not apply; the constitutional violation here—employment of a warrant lacking a substantive component long-since required by

published Sixth Circuit authority—justifies suppression. As such, the Court REJECTS Judge Ingram's recommendation, DE 58, and GRANTS Boatright's suppression motion, DE 25.

I. **BACKGROUND**

The Court recounts again the underlying facts:[1]

> On November 15, 2024, a judge in Bell County, Kentucky issued a search warrant authorizing the installation of a GPS tracking device on Katelynn Nichole Boatright's 2013 Chevrolet Camaro. *See* DE 25-2. Accompanying the warrant was an affidavit [authored by Detective Justin Barton with the Kentucky State Police ("KSP")] stating that two controlled methamphetamine buys had recently occurred between Boatright and law enforcement. *See* DE 25-1 at 2. The affidavit also highlighted the frequent short-term visitors that Boatright received in her home, along with her repeated and brief trips away from the residence. *See id.* The affiant indicated that, in his experience, Boatright's behavior was consistent with that of a drug trafficker. *See id.*
>
> The warrant authorized the installation of a tracking device on Boatright's vehicle, but it did not specify a deadline for . . . the duration of warranted monitoring. *See* DE 25-2. The parties do not dispute probable cause. A law enforcement officer with the Kentucky State Police installed the device on November 21, 2024 . . . . *See* DE 54 at 16, 72. The device remained active until Boatright was stopped on December 2, 2024. *See id.*
>
> Tracking data showed that on December 1, 2024, Boatright's Camaro traveled from Kentucky to Atlanta, Georgia. *See id.* at 25. On belief that Boatright might have been transporting drugs, Kentucky State Police alerted the Claiborne County, Tennessee Sheriff's Office that the vehicle would be returning through their county. *See id.* at 21, 60. The next day, an automated license plate reader alerted to the Camaro's presence in the county. *See id.* at 30. Upon learning that Boatright had an outstanding arrest warrant for methamphetamine trafficking from 2019, local officers conducted a felony traffic stop of the vehicle. *See id.* at 32–33. Boatright was sitting in the passenger seat . . . . *See id.* at 49.

DE 58 at 2–3.

Boatright was arrested. *See* DE 54 at 33–34. A later search of the car revealed three firearms, drug paraphernalia, and a large quantity of suspected methamphetamine in the trunk. *See* DE 26-2; DE 26-4; DE 54 at 36. A federal grand jury subsequently indicted Boatright for

---

[1] The Court has already adopted Judge Ingram's accurate recital of case circumstances. *See* DE 68 at 2 n.2.

"conspir[ing] with others to knowingly and intentionally distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846." DE 1.

Soon after, Boatright filed two motions to suppress. *See* DE 25; DE 26. Although the second motion has since been denied, *see* DE 68 at 19–22, the first motion—which asserts that police relied on a facially deficient warrant to place the GPS tracking device on her car and collect the data that ultimately triggered the traffic stop—remains active, *see id.* at 23. Judge Ingram recommended that the Court deny Boatright's first suppression motion, finding that the GPS tracking warrant was constitutionally valid. *See* DE 58 at 9–13. Boatright timely and particularly objected to the recommended disposition, *see* DE 61, and the Government responded, *see* DE 64.

On its initial review, the Court concluded that the GPS tracking warrant indeed was constitutionally deficient. *See* DE 68 at 10–15. In reaching that conclusion, the Court relied on *United States v. Bailey*, 628 F.2d 938, 945–46 (6th Cir. 1980), a Sixth Circuit decision holding that, in the context of a search, a warrant authorizing the use of a tracking device automatically violates the Fourth Amendment when it fails to limit the permissible duration of tracking. *See id.* Given that neither of the parties cited this decision in their previous filings, *see* DE 25; DE 32; DE 34; DE 61; DE 64, the Court ordered additional briefing on the applicability of the good faith exception in light of *Bailey* and its progeny, *see* DE 68 at 15–19. In doing so, the Court took particular care to emphasize some authority stating that it is impossible to rely on facially invalid warrants in good faith, *see id.* at 18, and other authority stating that exclusion is proper only where, in addition to a constitutional frailty, there is deterrable police misconduct, *see id.* at 17–18. Having received the parties' supplemental briefing, *see* DE 70; DE 71, the matter is ripe for the Court's decision.

3

## II.   LEGAL STANDARD

### A.  General Principles

When a party timely objects to a magistrate judge's dispositive recommendation, the Court must make "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* FED. R. CRIM. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

When seeking suppression in the context of a warranted search, the defense typically bears the burden of proof. *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003). That is, the defendant must provide evidence of "a violation of some constitutional or statutory right justifying suppression." *Id.* (citing *United States v. Feldman*, 606 F.2d 673, 679 n.11 (6th Cir. 1979)). Relevant to the immediate dispute, *Bailey* invalidates the warrant, and the Government bears the burden of proving that a particular exception applies to prevent exclusion after a defendant establishes that an officer conducted a search pursuant to an unconstitutional warrant. *See Coolidge v. New Hampshire*, 91 S. Ct. 2022, 2032 (1971) ("[T]he burden is on those seeking [an] exemption [to the warrant requirement] to show the need for it." (quoting *United States v. Jeffers*, 72 S. Ct. 93, 95 (1951))); *cf. United States v. Leake*, 95 F.3d 409, 417 (6th Cir. 1996) (allocating the burden of proving the applicability of the independent source and inevitable discovery doctrines to the Government).[2] The burden of showing objective good faith falls on the

---

[2] The burden issue is particularly important in the present matter, as the Government opposed Boatright's attempts to ask "questions about good faith" during the hearing, arguing that the issues to be addressed, good faith included, were limited to the four corners of the warrant. *See* DE 54 at 3–8. Judge Ingram then determined that "[t]he good faith analysis has nothing to do with anything beyond an examination of the warrant and its four corners," and no additional questions were necessary. *See id.* at 9. However, while

4

prosecution. *Leon*, 104 S. Ct. at 3421 (referencing burden of "prosecution . . . to establish objective good faith").

### B. The Exclusionary Rule and the Good Faith Exception

When evidence is obtained pursuant to an unconstitutional search or seizure, the exclusionary rule, if applicable, forbids the use of that evidence at trial.[3] *See Herring v. United States*, 129 S. Ct. 695, 699 (2009). The rule similarly extends to evidence derivatively obtained from an unconstitutional search or seizure under what is known as the "fruit of the poisonous tree" doctrine. *See United States v. Galaviz*, 645 F.3d 347, 354 (6th Cir. 2011) (citing *Wong Sun v. United States*, 83 S. Ct. 407, 417 (1963)). Notably, the Supreme Court has incorporated the protections of the Fourth Amendment, including the exclusionary rule, against both the states and state law enforcement. *See Elkins v. United States*, 80 S. Ct. 1437, 1447 (1960); *Mapp v. Ohio*, 81 S. Ct. 1684, 1691–94 (1961).

However, the exclusionary rule does not indiscriminately apply whenever evidence is obtained as a result of an unconstitutional search or seizure. In *United States v. Leon*, 104 S. Ct. 3405, 3416–19 (1984), the Supreme Court explicitly held that, in most cases, an officer's good faith reliance on a defective search warrant will counsel against application of the exclusionary rule, since suppression would serve no deterrent purpose, the exclusionary rule's catalyst. But the

---

this characterization may often be accurate for challenges to so-called "bare bones" warrants "lacking probable cause," *see id.* at 5, it is not accurate for challenges to an officer's reliance on a facially deficient warrant, as courts often consider the facts of warrant issuance, beyond the four corners of the warrant, in such instances. *See Massachusetts v. Sheppard*, 104 S. Ct. 3424, 3428–3429 (1984); *see also United States v. Frazier*, 423 F.3d 526, 534 (6th Cir. 2005) ("Because the Supreme Court has, in the past, looked beyond the four corners of the warrant affidavit in assessing an officer's good faith, we do not read [prior Sixth Circuit decisions] as prohibiting a court in all circumstances from considering evidence not included in the affidavit. . . . A court considering the fact that the warrant application had previously been rejected would necessarily have to look beyond the four corners of the document . . . .").

[3] And when a search is conducted pursuant to a constitutionally deficient warrant, it necessarily violates the Fourth Amendment, unless one of the specifically established exceptions to the warrant requirement applies. *See Katz v. United States*, 88 S. Ct. 507, 514 (1967).

*Leon* Court also articulated four (non-exhaustive) scenarios in which, though an officer secured and adhered to a warrant, the good faith exception would not apply to avoid exclusion. *See id.* at 3421; *see also United States v. Moorehead*, 912 F.3d 963, 968 (6th Cir. 2019) ("*Leon* delineated *at least* four instances in which a well-trained officer would have known a search was illegal, thus barring application of the good-faith exception . . . ." (emphasis added)). One such scenario is when the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Leon*, 104 S. Ct. at 3421 (citing *Sheppard*, 104 S. Ct. at 3428–3430).

The Sixth Circuit has analyzed this facial deficiency exception to the good faith exception on multiple occasions. In *United States v. Bateman*, the court recognized that "[n]otwithstanding [the good faith] exception, an officer still 'cannot reasonably presume' that a 'facially deficient' warrant is valid. . . . Evidence obtained as a result of a facially invalid warrant cannot be admitted pursuant to the 'good faith' exception." 945 F.3d 997, 1005 (6th Cir. 2019) (internal citation omitted) (quoting *Leon*, 104 S. Ct. at 3421). Likewise, in *United States v. Lazar*, the court emphasized that Supreme Court precedent "does not purport to alter that aspect of the exclusionary rule which applies to warrants that are facially deficient warrants *ab initio*." 604 F.3d 230, 237–38 (6th Cir. 2010). With that being said, the Sixth Circuit has cabined that proposition, recognizing—in light of more recent Supreme Court precedent—that even a robust facial deficiency is not enough to warrant automatic suppression absent a justificatory cost-benefits analysis. *See United States v. Master*, 614 F.3d 236, 243 (6th Cir. 2010) (citing and pivoting in reaction to *Herring v. United States*, 129 S. Ct. 695, 700 (2009)).

The Sixth Circuit has also made clear that a minor deficiency will not necessarily render a warrant unconstitutional. *See, e.g.*, *United States v. Abdalla*, 972 F.3d 838, 846–47 (6th Cir. 2020)

(finding that a warrant was not unconstitutional even though it listed the incorrect address to be searched, because the residence itself was described with accuracy). But once a warrant is adjudged unconstitutional on account of a facial deficiency, the good faith exception will not generally prevent suppression. *See Groh v. Ramirez*, 124 S. Ct. 1284, 1293–95 (2004) (declining to find that an officer's reliance on a warrant was reasonable when a "basic rule, well established by [the Supreme Court's] cases," indicated that the warrant was unconstitutional); *see also Leon*, 104 S. Ct. at 3421; *Bateman*, 945 F.3d at 1005. The degree of insufficiency matters: *Leon* phrased the test as whether the warrant was "*so* facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Leon*, 104 S. Ct. at 3421 (emphasis added). A deficiency must be stark enough, regarding particularity, to remove the reasonable presumption of validity.

But relative to the good faith exception, the Court is bound by a complementary mandate. Exclusion is only a proper remedy when the deterrent benefits outweigh the social costs. *See Master*, 614 F.3d at 243 (citing *Herring*, 129 S. Ct. at 700). Put simply, the exclusionary "rule's sole purpose is to deter police misconduct." *United States v. Sanders*, 106 F.4th 455, 467 (6th Cir.), *cert. denied*, 145 S. Ct. 603 (2024); *see also United States v. Davis*, 131 S. Ct. 2419, 2429 (2011) (noting that the Court has never applied "the exclusionary rule to suppress evidence obtained as a result of nonculpable, innocent police conduct"). Deterrable misconduct generally encompasses "deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring*, 129 S. Ct. at 702.

Critically, after a warrant is deemed unconstitutional, the Government bears the burden of proving that the good faith exception applies. *See United States v. Stephens*, 602 F. Supp. 3d 990, 997 (W.D. Ky. 2022) ("Similarly, the [G]overnment also bears the burden of showing that the good

7

faith exception applies." (quoting *United States v. Anderson*, No. 4:07-CR-23, 2007 WL 4732033, at *14 (N.D. Ohio June 21, 2007))); *United States v. Linares*, No. 13-CR-20368, 2015 WL 3870959, at *9 (E.D. Mich. May 4, 2015) ("Where the good-faith exception is in question, '[t]he burden rests on the [G]overnment to prove that [the executing officer's] reliance on a warrant was objectively reasonable." (quoting *United States v. Rissew*, 580 F. App'x 35, 36 (2d Cir. 2014))).

### III.  ANALYSIS

#### A.  The Good Faith Exception Does Not Apply and Suppression Is Warranted

Having already concluded that the open-ended GPS tracking warrant was unconstitutional, the Court must now answer two interrelated inquiries in line with the Supreme Court and Sixth Circuit's dual commands. First, was the warrant so facially deficient that the executing officer—Detective Barton—could not reasonably have relied on it? And second, would the benefits of deterring police misconduct outweigh the costs of suppression?[4]

##### 1.  The Executing Officer Could Not Have Relied on the Facially Deficient Warrant in Good Faith

Generally, an executing officer cannot reasonably presume that a facially deficient warrant is valid, and thus, often cannot rely on a facially deficient warrant in good faith. *See Bateman*, 945 F.3d at 1005; *see also Lazar*, 604 F.3d at 237–38. The Court agrees with Boatright's assertion that there are three rough exceptions to this rule. First, when the warrant is only flawed on account of a minor clerical, administrative, or typographical mistake not attributable to the executing officer. *See Sheppard*, 104 S. Ct. at 3429; *United States v. Watson*, 498 F.3d 429, 431–34 (6th Cir. 2007). Second, when the executing officer could not have known about the controlling legal principle that

---

[4] In her most recent filing, Boatright suggests that this second inquiry is subordinate to the first. *See* DE 70 at 6–10. But it is not. The Sixth Circuit has stated in no uncertain terms that the second inquiry is mandatory. *See Master*, 614 F.3d at 243. It is true, however, that these inquiries are intertwined, as the Court's subsequent analysis demonstrates.

rendered the warrant unconstitutional at the time of the search. *See United States v. Cassity*, 807 F.2d 509, 511–12 (6th Cir. 1986). And third, when the executing officer relied on law that was binding at the time of the search but was later invalidated. *See Davis*, 131 S. Ct. at 2429. The Court further agrees with Boatright's assertion that none of these exceptions applies here.

*i. Clerical, Administrative, or Typographical Mistake*

The Government's simplest argument is that the warrant's failure to limit the permissible duration of tracking was such a minor and insignificant error that the good faith exception should still apply. However, this argument is ultimately unavailing, as the present case is not sufficiently analogous to any of the cases that apply the concept.

In *Sheppard*, the applying officer informed the issuing judge that the pertinent warrant was potentially deficient or inaccurate because it was the wrong form for the type of search sought. *See* 104 S. Ct. at 3426–27. Despite the judge's assurances that he knew about and would cure the deficiency, he did not fix the flaw. *See id.* The Court ultimately concluded that the executing officers "took every step that could reasonably be expected of them," any purported constitutional violation resulted from the judge's personal error, and suppression would not serve a deterrent function. *See id.* at 3428. But here, Detective Barton did not, per the record as it is, take similarly careful steps when applying for the warrant at issue. There is no evidence suggesting that he brought the warrant's facial defect to the judge's attention, nor is there any evidence indicating that he relied on some explicit judicial assurance that the warrant was adequate. *See* DE 54 at 15–28; DE 25-2. Additionally, the warrant's failure to limit the duration of tracking was not a minor technical or clerical error that *may* have rendered it unconstitutional. *See Sheppard*, 104 S. Ct. at 3428 ("An error of constitutional dimensions *may* have been committed with respect to the issuance of the warrant . . . ." (emphasis added)). Rather, it was a substantive error that directly

9

altered Detective Barton's executing authority and actually *did* render the warrant facially unconstitutional under binding legal precedent.

For similar reasons, this case is also unlike *Watson*, where the Sixth Circuit applied the good faith exception despite "[t]he omission of the residence from the grant-of-authority section [of the warrant, which] was apparently the result of a clerical error." 498 F.3d at 433. As in *Sheppard*, the warrant at issue in *Watson* suffered from a purported clerical defect, not a substantive defect. *See id.* at 433–34. And as in *Sheppard*, a reasonable officer could not have identified the purported defect in the *Watson* warrant with just a "simple glance." *See id.* at 433. But none of these same considerations exist here, where the warrant's failure to limit the duration of tracking was both a substantive flaw and an obvious feature on its face. Moreover, this case is distinguishable from *Watson* on yet another dimension—while the judge in *Watson* "was entirely 'aware of the scope of the search he was authorizing,'" *see id.* (quoting *Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco & Firearms*, 452 F.3d 433, 440 (6th Cir. 2006) (en banc)), there is no indication that the judge here believed he in fact was limiting the permissible duration of Detective Barton's search. Thus, as with *Sheppard*, *Watson*'s logic is inapplicable to the GPS tracking warrant.[5]

---

[5] It is notable that, like the *Sheppard* Court, the *Watson* court did not resolve whether the warrant in dispute was unconstitutional before applying the good faith exception. *See Watson*, 498 F.3d at 431–34. This complicates the present analysis. If the *Watson* court had concluded that the warrant was constitutionally sound, then its good faith exception analysis would have been unnecessary, and the case would not be particularly analogous to the present matter where the Court has already determined that the warrant at issue was unconstitutional. Without knowing the extent to which the *Watson* decision is comparable to the present matter, the Court is left to speculate. In the Court's view, the good faith exception has increasingly been used as a tool to avoid resolving underlying Fourth Amendment issues, and that use may stunt further and necessary developments in the law. *See* Matthew Tokson & Michael Gentithes, *The Reality of the Good Faith Exception*, 113 GEO. L.J. 553, 568–71 (2025) (noting that the majority of federal decisions applying the good faith exception do so without analyzing the underlying substantive challenge).

Again, the truncated record figures in. It would have been helpful if the hearing had established which of Detective Barton or the judge actually drafted the terms of the warrant, and more generally, the extent of judicial involvement in the drafting process. *See* DE 54 at 15–28; DE 25-2. But although these facts were available in *Sheppard*, 104 S. Ct. at 3426–27, and in *Watson*, 498 F.3d at 433–34, they are not available here. This is mostly because the United States objected to, and Judge Ingram foreclosed, proof about the warrant application process. That was regrettable in this context; but any proof deficiency falls on the Government, the party with the burden. The warrant's invalidity means the prosecutor must establish a *Leon* exception, and the record is silent on Detective Barton's objective training, drafting steps, interactions with the judge, etc. We do know that Detective Barton's application itself did not feature a sought temporal limit, which supports the idea that he also drafted the deficient warrant. At a minimum, it shows he asked for a result contrary to *Bailey* and thus the Fourth Amendment.

Regardless, the Court notes that "[i]t is incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully conducted." *Groh*, 124 S. Ct. at 1293. Without knowledge of what Detective Barton told the judge, and precisely what guarantees the judge made to Detective Barton, the Court sees no reason to stray from this basic principle.

### ii. Inability to Know Controlling Legal Principle

There are no facts suggesting that Detective Barton was unable to know *Bailey*'s commands prior to executing the GPS tracking warrant. And because nothing prevented him from learning about the controlling principle of law that rendered the warrant unconstitutional, the Government's citation to *Cassity* is inapposite.[6]

---

[6] There are indicative steps along the way. *Bailey* flatly requires a temporal limit for a tracking warrant that implicates the Fourth Amendment. In *United States v. Jones*, the Supreme Court made clear that installation of a GPS tracker on a person's vehicle amounts to a Fourth Amendment search. *See* 132 S. Ct. 945, 949

In *Cassity*, the Sixth Circuit, post-*Leon*, affirmed an application of the good faith exception where the executing officers "install[ed] and monitor[ed] beepers after securing warrants that contained no time limits." 807 F.2d at 511–12. The Government argues that *Cassity* is relevant to the present matter because the Sixth Circuit explicitly relied on *Leon*, per the Supreme Court's direction, in applying the good faith exception. *See id.* at 510–11. The Government is correct, to a point, but it overlooks a crucial component of the Sixth Circuit's analysis. When the warrants disputed in *Cassity* issued, "there was no clearly established requirement that warrants for beepers must limit the duration of the installation and monitoring." *Id.* at 511–12. The fact that the executing officers acted before *Bailey* was decided is what established their good faith reliance. *See id.* at 512 (noting that "the warrants in question were issued and executed in 1977," years before the court held in *Bailey* "that warrants for beepers were required to have termination dates"). Detective Barton cannot make a similar argument. The hypothetical reasonable officer "will take care to learn 'what is required of them' under Fourth Amendment precedent and will conform their conduct to these rules." *Davis*, 131 S. Ct. at 2429 (quoting *Hudson v. Michigan*, 126 S. Ct. 2159, 2168 (2006)). Because Detective Barton either lacked knowledge of, misunderstood, or chose not to abide by *Bailey*'s commands, he did not act as a reasonable officer. *Cf. Vincent v. Commonwealth*, 706 S.W.3d 94, 98 (Ky. 2024) (finding that the good faith exception did not apply to an officer's misunderstanding of the law).

---

(2012) ("It is important to be clear about what occurred in this case: The Government physically occupied private property for the purpose of obtaining information. We have no doubt that such a physical intrusion would have been considered a 'search' within the meaning of the Fourth Amendment when it was adopted."). Thus, when Detective Barton sought a warrant authorizing the installation of a GPS unit in and subsequent tracking of Boatright's vehicle, he directly triggered both *Jones* and *Bailey*.

*iii. Reliance on Later Invalidated Law*

Nor is this a scenario in which Detective Barton relied on some principle of law that was invalidated after he executed the warrant. *Bailey* was good law when Detective Barton sought the warrant, and it remains good law today. Thus, the sensible exception established in *Davis* does not apply. *See* 131 S. Ct. at 2429.

**2. The Benefits of Suppression Outweigh Its Costs**

The exclusionary rule serves a single function—deterring police misconduct. *See Sanders*, 106 F.4th at 467. When the Court cannot identify sufficient "deterrable" misconduct to outweigh the substantial social costs of exclusion, suppression is unwarranted. *See Master*, 614 F.3d at 243 (citing *Herring*, 129 S. Ct. at 700). This requirement that suppression be justified by deterrable misconduct does appear to exist in some tension with the general rule that suppression is warranted when officers rely on a facially invalid warrant. *See Bateman*, 945 F.3d at 1005; *see also Lazar*, 604 F.3d at 237–38. However, the doctrines are not incompatible, as they can be reconciled with two general and logically linked principles of law: (1) a warrant that is unconstitutional on account of a significant facial deficiency cannot typically be reasonably relied upon; and (2) an officer who unreasonably relies on a warrant that is unconstitutional on account of such a facial deficiency has engaged in some degree of deterrable misconduct. And *Leon*, the Court must note, hinges on "the circumstances of the particular case." *See* 104 S. Ct. at 3421.

Here, for several reasons, the Court views Detective Barton's actions as warranting the harsh exclusionary sanction.

Foremost, the detective directly sought an unconstitutional product from the issuing court. Though that court bears responsibility for its warrant, Detective Barton submitted the application, and likely a warrant form, lacking an essential constitutional ingredient: "a time limit." *Bailey*,

13

628 F.2d at 945. Indeed, as in *Bailey*, the warrant's purported remit here was "surveillance [that] could have continued ad infinitum." *Id.* As the state representative invoking this power lever, Detective Barton had a duty to understand the rules and limits of the Fourth Amendment. *See Herring*, 129 S. Ct. at 702–03; *Davis*, 131 S. Ct. at 2429.

Further, Detective Barton surely confronted the question of the operative length of tracking. He not only applied for and secured the warrant but also made a return on the warrant during the tracking period. *See* DE 25-2 at 2. That return noted placement of the tracker on November 21, 2024. *See id.* As to tracking details and the information authorized to be collected by the warrant, the return stated: "Case will be supplemented at a later date." *Id.* Regrettably, and contra to the Constitution, the warrant gave Detective Barton alone the decision on how long to track, something he must have recognized in the administration of the warrant. The judicial officer provided no guidance on the warrant's face. Per *Bailey*, "the temporal relationship between the Government's showing of probable cause and the search and seizure being authorized must appear on the face of the warrant." 628 F.2d at 945. That missing stated limit made the warrant "invalid" and without "the requirements of the [F]ourth [A]mendment."[7] *See id.*

Because he operated under Kentucky law and went to a state judge, Detective Barton was in territory providing murky procedure and boundaries. The Court is struck by the awkwardness of the search warrant form materials, under Kentucky law, in the tracking context, where use of "premises" and "personal property" to be seized uneasily fits the electronic surveillance actually sought and permitted. Kentucky's warrant rule in no way specifically addresses tracking

---

[7] It is true that the tracking here (17 days post-warrant) likely did not extend beyond the period probable cause supported. But that happy coincidence, which sprang from Boatright's fateful Georgia trip, does not spare a warrant invalid at issuance.

mechanics, standards, and protocols.[8]  *See* KY. R. CRIM. P. 13.10.  Further, although there are Kentucky cases that involve discussions of tracking, *see, e.g.*, *Commonwealth v. Reed*, 647 S.W.3d 237 (Ky. 2022); *Hedgepath v. Commonwealth*, 441 S.W.3d 119 (Ky. 2014), the Court sees little illuminating the protocols for such an authorization.  The Court thus would expect a Kentucky law enforcement applicant to proceed with proper caution in the ill-defined area.  As Kentucky itself has noted in an analogous context, lack of guidance in an area is not license for law enforcement.  *See Reed*, 647 S.W.3d at 254 ("The good-faith exception . . . requires law enforcement to act in reasonable reliance upon binding precedent, not the lack of binding precedent.  Unless this Court or the United States Supreme Court has expressed definitively that an area is not subject to constitutional protections or that an exception to the warrant requirement applies, law enforcement should obtain a warrant before taking action.").

The Court sees no citation to *Bailey* in the Kentucky courts and worries about state law enforcement's broad cognizance of its important principle.  Again, the hearing in this case did not, despite Boatright's efforts, delve into necessary warrant-issuance facts, such as KSP policies, Detective Barton's training, or his interaction with the issuing judge.  If Barton forged ahead consistent with standard KSP directives, broader systemic deterrent values plainly would apply.  With the Government leaning on a void warrant, it had the burden of proving a route to search

---

[8] Kentucky does not have an analogue to Federal Rule of Criminal Procedure 41(e)(2)(C), which mandates the installation of tracking devices "within a specified time no longer than 10 days," and permits tracking only for a "reasonable length of time" that may not "exceed 45 days from the date the warrant was issued." By contrast, Kentucky's warrant rule lacks any procedural requirements or limits particular to tracking. *See* KY. R. CRIM. P. 13.10.  On the known occasions where the Eastern District of Kentucky has evaluated GPS tracking warrants issued in Kentucky state courts, those warrants have included temporal limitations, albeit broad ones.  *See, e.g.*, *United States v. Petitfrere*, No. 5:22-CR-37, 2022 WL 2134590, at *2–3 (E.D. Ky. June 14, 2022) (referencing a Kentucky warrant that authorized GPS tracking for 90 days); *United States v. Crawford*, No. 17-CR-34, 2018 WL 3388135, at *2 (E.D. Ky. July 12, 2018) (referencing a Kentucky warrant that authorized GPS tracking for 60 days).

validation—here, that Barton, as a reasonably well-trained officer, could fairly rely on the issued document.

Certainly, a reasonably well-trained officer would know the foundational warrant contours of the Fourth Amendment, including those limned by a published Sixth Circuit case. *Davis* readily notes: "Responsible law enforcement officers will take care to learn 'what is required of them' under Fourth Amendment precedent and will conform their conduct to those rules." 131 S. Ct. at 2429 (quoting *Hudson*, 126 S. Ct. at 2168). This principle has both prospective and retrospective import; surely, it is reasonable to expect an officer to have awareness of and to abide by the published Fourth Amendment law from the federal circuit in which he enforces the law.

The Court grappled with an anecdotal signal from this litigation: that the lawyers and magistrate judge did not reference *Bailey* in assessing the durational requirement. Of course, that context was a post-issuance assessment of warrant validity, and none of the federal lawyers would have been well-tuned to the issue, given that Federal Rule of Criminal Procedure 41 has granular timing requirements. Those came into being in 2006, pre-*Jones*, and were designed in part to "avoid open-ended monitoring of tracking devices." FED. R. CRIM. P. 41 advisory committee's note to 2006 amendment. Though the litigants' miss says something about the apparency of *Bailey* to the uninitiated, the research yield in one case does not set the bar for the objective systemic training requirements of the KSP or its officers. *Bailey*, in a published case from 1980, set a durational limit for any tracking warrant that implicates the Fourth Amendment. Surely, if *Leon* (as applied in *Davis*) validates a search in reliance on published authority later changed, it would be unlikely to validate a search that *ignores* published authority that yet remains in good stead. Suppression here respects the constitutional limit in a manner likely to assure recognition of that limit prospectively. *Herring* recognizes the propriety of suppression when the law enforcement

16

officer "had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." 129 S. Ct. at 702 (citation omitted). *Bailey*, and later *Cassity*, are valid cases, on the books, setting required tracking warrant components per the Fourth Amendment. The officer here is properly charged with knowledge of what *Bailey* requires and the lacuna in this warrant. A reasonably well-trained officer would have known to seek and confirm a durational limit. "It is incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully conducted." *Groh*, 124 S. Ct. at 1293; *see also id.* at 1293 n.6 (referencing "a duty to ensure that the warrant conforms to constitutional requirements"); *Watson*, 498 F.3d at 433 (noting heightened duty to ensure constitutional conformity for officer that drafts application and warrant and applies for warrant issuance).

After careful assessment of all dynamics, the Court finds that the required cost-benefit analysis, per the *Davis* and *Herring* rubric, indicates the propriety of suppression. The detective here did not negligently miss a typo or improperly complete a pre-printed form. Rather, he sought, obtained, and utilized a void warrant lacking a mandatory temporal limit, one imposed by a Sixth Circuit decision on the books and in force for four decades. The Court finds the degree of misconduct appropriate to justify suppression.

### B. Scope of Suppression

Because the good faith exception does not apply, and because the case justifies exclusion, the Court grants Boatright's motion. As such, it is now necessary to address the scope of suppression.

The Court must suppress any evidence obtained pursuant to the constitutionally deficient warrant as well as any evidence derivatively obtained, so long as the causal link between the deficient warrant and the derivative evidence is not overly attenuated. *See Galaviz*, 645 F.3d at

17

354 (citing *Wong Sun*, 83 S. Ct. at 417). Here, the GPS tracking data must be suppressed, as it was obtained under direct authorization from the unconstitutional warrant. The Court also suppresses the controlled substances, drug paraphernalia, firearms, and other items discovered on Boatright's person and in her vehicle during the felony traffic stop. While Boatright did have an active arrest warrant in Tennessee, she would not have been tracked through the automatic license plate reader and subsequently arrested if not for KSP's alert. The Government conceded the causal link between the GPS data and the stop. *See* DE 54 at 91 (prosecutor conceding that there was no severance in causal connection); *see also United States v. Williams*, 615 F.3d 657, 669 (6th Cir. 2010) (quoting *Brown v. Illinois*, 95 S. Ct. 2254, 2261–62 (1972)). The exclusion applies to the Government's case in chief, under recognized exclusionary rule principles. *See James v. Illinois*, 110 S. Ct. 648, 655 (1990).

### IV. CONCLUSION

For the above-stated reasons, the Court REJECTS Judge Ingram's recommended disposition, DE 58, and GRANTS Boatright's suppression motion, DE 25. All GPS tracking data obtained pursuant to the deficient warrant is suppressed, along with all evidence obtained from the traffic stop occurring on December 2, 2024.

This the 15th day of December, 2025.

Signed By:
*Robert E. Wier*
United States District Judge

18